UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

John Colletti and Daiva Colletti,

       Plaintiffs,

v.

Nationstar Mortgage ,LLC, et al.,

       Defendants.

_____/

Case No. 13-13461

Honorable Nancy G. Edmunds

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO REMAND [5] AND GRANTING DEFENDANTS' MOTION TO DISMISS [3]

Plaintiffs John and Daiva Colletti have filed suit against Defendants Nationstar Mortgage, LLC, and U.S. Bank, N.A. (Defendants) and a group of "unknown holders" for the alleged unlawful activity related to a mortgage Plaintiffs executed in favor of non-party First Franklin Financial Corporation to secure a loan to purchase a condo in 2007.

Plaintiffs executed the mortgage with a 9.35% interest rate. Plaintiffs base their entire complaint on the allegation that a First Franklin representative told them, if Plaintiffs made the twelve initial payments at the 9.35% interest rate, then First Franklin would lower the interest rate to 5%.  The alleged promise was not memorialized in writing.  The interest reduction never occurred, despite there being no indication that Plaintiffs did not make twelve consecutive payments.  The mortgage and the mortgage servicing were both transferred multiple times before eventually being transferred to Defendant U.S. Bank and Defendant Nationstar.

Plaintiffs now assert various ways in which they believe Defendants are liable for the failure to reduce the interest rate that First Franklin promised.

Before the Court are Plaintiffs' motion to remand and Defendants' motion to dismiss. Because the Court finds that Defendants properly removed the case from state court on the basis of diversity jurisdiction, the Court DENIES Plaintiffs' motion to remand. Because the Court finds that Plaintiffs cannot hold Defendants liable for non-party First Franklin's representative's statements, and because Plaintiffs' allegations do not state claims that can withstand a Rule 12(b)(6) motion to dismiss, the Court GRANTS Defendants' motion to dismiss and dismisses the complaint.[1]

## I.    Facts

On July 12, 2007, Plaintiffs executed a promissory note and mortgage on the property to secure a loan to purchase a condo.[2] (Compl. ¶ 9.)  The loan was for $106,400.00.  Non-party First Franklin Financial Corporation was the lender and Mortgage Electronic Registration Systems, Inc., was the nominee for First Franklin.  (*Id.*)  The mortgage was recorded on July 25, 2007, in the Wayne County Register of Deeds.  (*Id.*)

Plaintiffs allege that they were "fraudulently duped into participating in the [mortgage] transaction, from the beginning."  (Compl. ¶ 12.)

Plaintiffs state that they were duped because the mortgage contained a high interest rate, 9.35%, and that First Franklin's representative promised Plaintiffs, "in no uncertain

---

[1]The docket reflects that Plaintiffs have not served Holders with process.  The Court also dismisses the complaint against Holders.  Plaintiffs have failed make any allegations against them, as against Nationstar and U.S.Bank, that would entitled Plaintiffs to relief.

[2]The subject of this case is Plaintiff's condo at 20445 Williamsburg Court, Harper Woods, Michigan.  (Compl. ¶ 1.)

terms," that First Franklin would lower the interest rate to 5% if Plaintiffs made twelve monthly payments at 9.35%.  (Compl. ¶ 13.)

Plaintiffs maintain that "[b]ased specifically on First Franklin's promises of a refinance to a 5% interest rate, on the condition that Plaintiffs make twelve consecutive timely payments at the 9.35% interest rate, Plaintiffs agreed to participate in the closing, sign the [l]oan documents, and make their payments in a timely fashion."  (Compl. ¶ 14.)

Plaintiffs state that First Franklin never had any intention of lowering the interest rate and fraudulently induced Plaintiffs into signing the loan with its promise of a lower interest rate.  (Compl. ¶ 15.)

Plaintiffs explain that, after executing the loan documents, First Franklin or Merrill Lynch pooled the loan with other mortgage loans and sold them as a "mortgage-backed security" to LaSalle Bank.  (Compl. ¶ 16.)  First Franklin, Plaintiffs allege, only serviced the loans.  (*Id.*)  Plaintiffs then state that they "were never sent any of the legally required notifications of the transfer of the [l]oan from First Franklin to Merrill Lynch, or from Merrill Lynch to the Trust, or from the Trust to LaSalle Bank, in violation of federal law[.]" (*Id.* ¶ 17.)

Plaintiffs state that they continued to receive billing statements from First Franklin, although it was only the servicer and did not hold the mortgage.  (Compl. ¶ 18.)

In 2008, Plaintiffs found out that the loan was transferred from LaSalle Bank to U.S. Bank.[3]  (Compl. ¶ 20.)  Plaintiffs maintain that they never were sent "any of the legally required notifications of the transfer of the [l]oan."  (*Id.* ¶ 21.)  In the fall of 2008, Plaintiffs

_____

[3]U.S. Bank is a national banking association headquarated in Minnesota.  (Compl. ¶ 3.)

3

state that Bank of America became the servicer of their loan.  (*Id.* ¶ 39.)  Plaintiffs maintain that they were kept in the dark by First Franklin, Merrill Lynch, LaSalle Bank, and Bank of America as to all of the ownership transfers.  (*Id.*)  Plaintiffs state that they were under the impression that First Franklin still owned their loan but that Bank of America was acting as the loan's servicer.  (*Id.*)

In June, 2013, Plaintiffs received notice that Nationstar was taking over the servicing of their mortgage.[4]  (Compl. ¶ 41.)

Plaintiffs say that Nationstar does not hold Plaintiffs' mortgage and does not possess the note or even a copy of the note.  (Compl. ¶ 41.)  Plaintiffs maintain that Nationstar is a third-party servicing agent, "which mails out bills, answers phone calls, and manages escrow accounts, on behalf of the Trusts which own the mortgage loans."  (*Id.* ¶ 42.)

Plaintiffs maintain that the pooled loan was subject to a "pooling and servicing agreement," governed by New York law, and "absolutely" required the assignment of a mortgage and the transfer of a note to be performed in a certain way and within a specified time-frame, which, Plaintiffs allege, did not happen with their mortgage. (Compl. ¶ 43.)

Plaintiffs state that "there has never been an assignment executed and/or recorded in the offices of the Wayne County Register of Deeds.  (Compl. ¶ 44.)  Plaintiffs argue that "the chain of custody, the ownership, the control, and the current location of the note at issue . . . are all in dispute at this time."  (*Id.* ¶ 45.)

Plaintiffs explain that they continued to make their monthly principal and interest payments in a "timely fashion, for the next several years[.]" (Compl. ¶ 47.)

---

[4]Nationstar is a Delaware limited liability company with its principal place of business in Texas.  (Compl. ¶ 2.)

4

In June, 2013, Plaintiffs state that they sought an attorney's advice about the "fraudulent inducement inflicted upon them in July, [2007], and it was at that point that their present counsel researched the issue, and alerted them, among other things, to the many above-referenced transfers of their loan, for which they were never sent any of the required notices."  (Compl. ¶ 48.)

## II.   Procedural history

On July 13, 2013, Plaintiffs filed their nine-count complaint in Michigan state court. (Dkt. 1, Compl.)  Plaintiffs alleged counts for (1) violation of the Truth in Lending Act, 15 U.S.C. 1641(g) (TILA), (2) breach of contract, (3) promissory estoppel, (4) violation of the Michigan Mortgage Brokers, Lenders, and Services Licensing Act, Mich. Comp. Laws § 445.1672 (MBLSLA) (against Nationstar and Holders only), (5) intentional fraud, (6) constructive fraud, (7) declaratory relief–pooling and servicing agreement, (8) declaratory relief–incurable lack of chain of title, and (9) quiet title.  (*Id.*)

Plaintiffs request actual and consequential damages, attorney's fees, a declaration that they no longer owe on the loan, and a declaration that they have title to their condo, free and clear of any mortgage.

On August 13, 2013, Defendants Nationstar and U.S. Bank removed the action to federal court, alleging both diversity jurisdiction and federal question jurisdiction.  (Dkt. 1, Notice of Removal.)

On August 20, 2013, Defendants filed their motion to dismiss.  (Dkt. 3.)  On September 12, 2013, Plaintiffs filed their motion to remand.  (Dkt. 5.)  A month later, on

October 15, 2013, Plaintiffs filed a notice of voluntary dismissal, seeking to dismiss the sole federal statute claim, violation of TILA, against Defendants.[5]  (Dkt. 9.)

## III.   Rule 12(b)(6) motion to dismiss standard of review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief.  See *Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1950 (internal quotation marks and citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court

---

[5]The Court views Plaintiffs' request to voluntarily dismiss the TILA claim as an effort to destroy what the Plaintiffs believe was the only basis of federal subject matter jurisdiction–federal question.  But, as the Court discusses below, the case is also properly before the Court on diversity jurisdiction.

to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal quotation marks and citation omitted).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

## IV.   Analysis

### A. The case is properly before the court on diversity jurisdiction

Plaintiffs have filed a motion to remand.  (Dkt. 5.)  The Court addresses this motion first, for if the Court lacks subject matter jurisdiction over the case, it must remand the case to state court.

Plaintiffs argue (1) that Defendants did not file all of the state court documents on this docket, as they allege 28 U.S.C. § 1446(a) requires, and (2) that Defendants have not established that the Court has federal question jurisdiction over all the claims in the case.

Plaintiffs first argue that Defendants did not attach, in their notice of removal, of all the documents of record in the state court.  (Pls.' Mot. at 1.)  Plaintiffs specifically state that

7

Defendant did not attach the summons for the unnamed Holders, who have not appeared in this action.  (*Id.*)  That failure, Plaintiffs argue, should entitle them to remand.  (*Id.*)

Plaintiffs cite outside authority for the proposition that a defendant must attach all the documents served on all parties in order to remove a case.  That requirement does not exist in this district, as Defendants point out.  *See Cadez v. Residential Credit Solutions, Inc.*, 13-10772, 2013 WL 2238486 (E.D.Mich. May 21, 2013) (Cleland, J.) (holding that 28 U.S.C. 1446(a) (the removal statute) does not require defendants to file all of the pleadings from the state court proceeding, instead, it requires only those documents that were served on them.) (And holding that the defendant's notice of removal did not need to include summonses or proofs of service served on an unknown trust and unknown trustee.) (And citing cases for the proposition that the "failure to attach a co-[d]efendant's summons to the notice of removal constitute[s] a *de minimis* procedural defect that [does] not necessitate remand of the case to state court.") (second and third insertion in *Cadez*, citations omitted). The Court rejects Plaintiffs' argument that not attaching the summons divests the Court of jurisdiction.

Plaintiffs next argue that Defendants have not proven that this entire action belongs in federal court on the grounds of federal question and supplemental jurisdiction.  (Pls.' Mot. at 3.)

The Court rejects Plaintiffs' arguments.  Defendants first stated that they were removing the case on the basis of diversity jurisdiction, which Plaintiffs do not even address.  The Court has reviewed the pleadings and the notice of removal.  The Court finds that it has jurisdiction over all of the claims in this case based on diversity jurisdiction.

8

Defendants have alleged that all the parties are diverse and that the amount in controversy exceeds $75,000.00.  (See Notice of Removal.)

The Court therefore DENIES Plaintiffs' motion to remand.

### B. Plaintiffs have not complied with Rule 41's procedures for voluntary dismissal

Plaintiffs' have filed a notice of voluntary dismissal that does not follow Federal Rule of Civil Procedure 41(a)'s procedures.  That rule permits a plaintiff to voluntarily dismiss an action without a court's approval only if the defendant has not answered the complaint or by a stipulation of all the parties.  Fed.R.Civ.P. 41(a)(1)(A).  Plaintiffs have not met either condition.  Since Plaintiffs have not complied with Rule 41(a)(1)(A), Plaintiffs must seek an order from the Court under Rule 41(a)(2).  Plaintiffs have not done so.  The Court therefore finds that it can properly adjudicate the claim.

### C. Plaintiffs' complaint fails to state a claim upon which the Court can grant relief

Defendants have filed a motion to dismiss Plaintiffs' complaint.  Defendants raise a multitude of arguments as to why Plaintiffs' claims fail.  The Court addresses the strongest of these arguments, and agrees with Defendants.

#### 1. Plaintiffs cannot hold Defendants liable for First Franklin's representative's statements or promises that First Franklin would refinance the loan after twelve months during the loan origination

Defendants first argue that Plaintiffs have not pleaded a viable claim based on the alleged promise to refinance the loan.  (Defs.' Mot. at 5.)  Defendants maintain that Plaintiffs cannot assert their breach of contract, promissory estoppel, intentional fraud, and

constructive fraud claims that they have premised on First Franklin's representative allegedly coercing Plaintiffs to enter into the 9.35% interest rate loan. (*Id.* at 5-6.)

Defendants assert that these claims are not actionable for four reasons. (Defs.' Mot at 5-11.) Defendants first argue that an assignee of a mortgage does not inherit the originating lender's tort liability. (*Id.* at 6.) Defendants next argue that the Michigan Statute of Frauds bars any claim that Plaintiffs have premised on an alleged oral promise by First National. (*Id.* at 7.) Defendants then argue that breaking a future promise is not actionable fraud. (*Id.* at 10.) Defendants finally argue that Plaintiffs have not pleaded fraud with the particularly that Rule 9(b) requires. (*Id.*)

### a. First Franklin's tort liability does not transfer to Nationstar or U.S. Bank and Plaintiffs have not shown that Nationstar of U.S. Bank can be liable for First Franklin's alleged breach of contract

Defendants argue that Plaintiffs have not alleged that Nationstar or U.S. Bank had any involvement in the origination of the loan or alleged fraud. (Defs.' Mot. at 6.) Defendants contend that Plaintiffs premise Defendants' liability on the fact that Defendants are First Franklin's "predecessor[s] in interest." (*Id.*) Defendants maintain that Plaintiffs have not pleaded why Nationstar and U.S. Bank would be liable for the actions of a third party and that Plaintiffs have failed to do so. (*Id.*) Defendants also maintain that their subsequent involvement as servicer and assignee does not create successor liability. (*Id.*)

Plaintiffs respond that Defendants are liable for the conduct of their "putative assignor" because the law in Michigan is "clear" that "an assignee stands in the shoes of an assignor." (Pls.' Resp. at 1.) Plaintiffs quote from *Coventry Parkhomes Condominium Association v. Federal National Mortgage Association*, 827 N.W.2d 379 (Mich.Ct.App. 2012):

> It is well established that an assignee stands in the shoes of an assignor, acquiring the same rights and being subject to the same defenses as the assignor.  When a mortgage is assigned, the assignee, for all beneficial purposes claimed under it by him, becomes a party to the mortgage, and stands in the place of the mortgagee[.]

(all quotation marks and citations omitted).  Applying the above language, Plaintiffs state that, to the extent that Defendants argue that they are First Franklin's assignees, they are liable to Plaintiffs under Michigan law. (Pls.' Resp. at 2.)  Plaintiffs extend the argument by posturing that, if Defendants did not stand in First Franklin's shoes, they would have no interest in the mortgage and could not challenge Plaintiffs' request for declaratory relief. (*Id.*)

While the above-quoted language may appear to support Plaintiffs' position, it does not.  That language only applies to the transfer of contractual duties, responsibilities, and liabilities, not to tort liabilities.  *See Warner v. Federal Home Loan Mortg. Corp.*, 12-15185, 2013 WL 1281932, at *5 (E.D.Mich. Mar. 26, 2013) (Duggan, J.) (holding that, "to the extent the original lender committed misconduct during the loan origination, such conduct cannot be imputed to . . . assignees.") (dismissing the fraud claim and rejecting the "stands in the shoes" argument.) (citations omitted).

In *Warner*, the plaintiff, as here, attempted to hold subsequent mortgage assignees liable for the unrelated original lender's misconduct.  2013 WL 1281932, at *5.  The court discussed Michigan law distinguishing tort actions from contract actions.  *Id.*  The court held and quoted:

> the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie.

*Id.* (citations and quotation marks omitted). Because the plaintiff failed to identify any duty that the defendant owed the plaintiffs, and no duty existed, the court dismissed the fraud claim. *Id.* The court additionally, on the same basis, dismissed the rescind/reform the mortgage and quiet title claims that the plaintiffs asserted based on fraud. *Id. See also Stacey v. Vista Mortg. Corp.*, 10-13769, 2011 WL 66505958, at *3 (E.D.Mich. Dec. 21, 2011) (Steeh, J.) (holding that misconduct during a loan origination cannot be imputed to an assignee of the mortgage.). *And see Chowdhury v. Aegis Mortg. Corp.*, 09-11221, 2009 WL 3270090, at *4 (E.D.Mich. Oct. 9, 2009) (Murphy, J.) (rejecting the plaintiff's argument that an assignee of a mortgage can be liable for the tortious conduct of the original mortgage; and explaining that the plaintiff's cases "refer to rights and liabilities an assignee receives under the assignment of a *contract*, not tort liabilities the assignee would inherit from assignor under the assignment.") (and affirmatively explaining "[a] tort claim under Michigan law . . . cannot be premised on a breach of a contractual obligation, but must be based on a duty owed the plaintiff by the defendant that is separate and distinct from the defendant's contractual obligations.").

Here, as in the cases cited above, Plaintiffs have failed to allege duty owed on Defendants' part. First Franklin is the alleged tortfeasor, not Defendants. First Franklin is also the alleged party that breached the contract. There is no indication that the remaining defendants did not and have not performed the contractual duties or knew of First Franklin's promise. *See Chowdhury*, 2009 WL 3270090, at *5 (holding that the plaintiff could not hold the subsequent mortgage holder mortgage company liable when the plaintiff's allegations were against the loan originator and that the plaintiff failed to make any allegations of breach of the mortgage against the subsequent holder.). Nor have

12

Plaintiffs made any allegations that would support a finding that the relief of promissory estoppel is appropriate. The Court therefore agrees with Defendants, Plaintiffs cannot sustain  breach of contract, promissory estoppel, intentional fraud, and constructive fraud claims that they have premised on First Franklin's representations.

### b. The Michigan financial institution statute of frauds bars Plaintiffs' claims

Defendants also argue that Michigan's statute of frauds bars any claim premised on an alleged oral promise by a financial institution. (Defs.' Mot. at 7.) Plaintiffs respond that Michigan's statute of frauds does not apply. (Pls.' Resp. at 2.) Plaintiffs contend that First Franklin was not a financial institution within the meaning of the statute. The Michigan statute of frauds provides:

> [a]n action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation[.]

Mich.Comp.Laws § 566.132(2)(a) and (b). A "financial institution" "means a state or national chartered bank, a state or federal chartered savings bank or savings and loan association, a state or federal chartered credit union, a person licensed or registered under the mortgage brokers, lenders, and servicers licensing act . . . or an affiliate or subsidiary thereof." Mich.Comp.Laws § 566.132(3).

13

Plaintiffs argue that First Franklin "is not a financial institution within the meaning of [the statute of frauds.]" (Pls.' Resp. at 3.)  Plaintiffs state that First Franklin is a Delaware Corporation.  (*Id.*)  In their complaint and at the hearing, Plaintiffs alleged that Defendant Nationstar is also not a "financial institution" as § 566.123(3) contemplates.

Defendants argue that Plaintiffs "are suing financial institutions for damages resulting from an oral promise;" and that the statute of frauds bars Plaintiffs' claims.  (Defs.' Reply at 5.)  Defendants maintain that the case that Plaintiffs rely on *Barclae v. Zarb*, 834 N.W.2d 100 (Mich.Ct.App. 2013), does not support Plaintiffs contention that First Franklin and Defendant Nationstar are not financial institutions.

In *Barclae v. Zarb*, 834 N.W.2d 100 (Mich.Ct.App. 2013), the plaintiffs sued the defendants for alleged misrepresentations one of defendants' representatives made to induce the plaintiffs to enter into a loan agreement.  The defendant's representative argued that he could assert the statute of frauds as a defense on an agency theory.  *Id.* at 113.  The court agreed.  *Id.*

Plaintiffs misstate the holding of *Barclae v. Zarb*, 834 N.W.2d 100 (Mich.Ct.App. 2013).  Plaintiffs state that the representative could not avail himself of the statute; that statement is an incorrect reading of the case.  Plaintiffs have offered no credible argument that First Franklin or Nationstar mortgage were not financial institutions as the statute contemplates.  Plaintiff has only conclusorily alleged that both were not financial institutions.  The Court need not credit those conclusory allegations.  As to Nationstar, a quick search of Michigan's Department of Insurance and Financial Services website shows

14

that Nationstar is, and has been since 2006, a licensed mortgage servicer in Michigan.[6] Nationstar therefore can assert the statute of frauds as a defense.[7]

Regardless of First Franklin's ability to conduct business in this state or status as a financial institution, the Court holds that, even if Plaintiffs could attribute First Franklin's statements to Defendants, Defendant Nationstar or U.S. Bank still have the statute of frauds defense available to them.

The statute of frauds therefore bars Plaintiffs' breach of contract, promissory estoppel, and fraud claims. Plaintiffs base all of these claims on the allegation that the First Franklin representations allegedly made that First Franklin would reduce Plaintiffs' interest rate. This oral promise at the time of the loan origination is the exact type of promise that the statute of frauds bars. *See Crown Tech. Park v. D & N Bank, FSB*, 619 N.W.2d 66 (Mich.Ct.App. 2000) (holding that the statute of frauds also prohibited a promissory estoppel claim.); *Vittands v. Bank of America*, 11-15241, 2012 WL 1696708, at *3 (E.D.Mich. May 15, 2012) (Rosen, C.J.) (holding that the statute of frauds bars both intentional and negligent misrepresentation claims.); *Biondo v. J.P. Morgan Chase Bank, N.A.*, 11-11664, 2013 WL 1721195 (E.D. Mich. Apr. 22, 2013) ("statute of frauds barred a fraud claim based on 'an oral promise for a particular type of loan that was not memorialized in writing.'").

---

[6]*Available at*: http://www.michigan.gov/difs/

[7]A search of First Franklin on the website did not return any results.

Given that the Court has found two reasons why Plaintiffs' breach of contract, promissory estoppel, and fraud claims, the Court does not address the Rule 9(b) particularity and future promise arguments.

### 2. Defendants did not violate TILA and the TILA statute of limitations bars Plaintiffs' claim

Defendants then argue that they did not violate TILA, 15 U.S.C. § 1641(g).[8] (Defs.' Mot. at 11-12.) Defendants state that 15 U.S.C. § 1641(g) was not enacted until 2009 and that all of the alleged transfers occurred before the statute was enacted. (*Id.* at 12.) Defendants are correct. In their complaint, all of the alleged transfers, from which Plaintiffs allege a violation of TILA, occurred before 2009. *See Rishoi v. Deutsche Bank Nat'l Trust Co.*, 12-12957, 2013 WL 142258, at *6 (E.D.Mich. Jan. 11, 2013) (Drain, J.) (holding that the plaintiff could not assert a TILA claim for an alleged violation in 2006 when the statute was enacted in 2009).

Defendants also argue that TILA's one-year statute of limitations would bar any of Plaintiffs' claims and that Plaintiffs' tolling argument fails. (Defs.' Mot. at 14.) The Court agrees. *See again Rishoi v. Deutsche Bank Nat'l Trust Co.*, 12-12957, 2013 WL 142258, at *6 (E.D.Mich. Jan. 11, 2013) (Drain, J.) (alternatively holding that TILA's statute of limitations would bar the plaintiff's claim and that the plaintiff had made no showing that he would be entitled to equitable tolling.). The Court also finds that TILA's statute of limitations would bar Plaintiffs' claim based on its 2007 mortgage and that Plaintiffs are not entitled

---

[8]15 U.S.C. § 1641(g) requires a creditor that is a new owner or a new assignee of a debt to notify the borrower, in writing, of the transfer.

16

to equitably toll the statute, for there was no wrongful concealment here and Plaintiffs knew

of all the facts (the failure to reduce the interest rate) within the statute of limitations period.

### 3. Plaintiffs cannot sustain an MBLSLA claim[9]

The MBLSLA prohibits, among other things, a "licensee or registrant" from engaging

in "fraud, deceit, or material misrepresentation in connection with any transaction governed

by [the MBLSLA.]" Mich.Comp.Laws § 445.1672(b).   Plaintiffs, for the same reason that

they cannot sustain a contract or fraud related claims–Defendants were not present at the

loan origination–cannot succeed on this claim.   *See  Caillouette v. Wells Fargo Bank N.A.*,

11-10204, 2012 WL 1033598 (E.D.Mich. Mar. 27, 2012) (stating that "[the plaintiffs] have

not pled any facts showing how [the defendant] violated the [MBLSLA] inasmuch as [the

defendant] was not even present at the loan origination, and . . . [the plaintiffs'] claims of

misrepresentation are predicated entirely on representations allegedly made to them at the

time of the loan origination.")  *See also Chowdhury v. Aegis Mortg. Corp.*, 09-11221, 2009

WL 3270090 (E.D.Mich. Oct. 9, 2009) (holding that the plaintiff had shown no viable theory

upon which the assignee would be liable for the original mortgage company and dismissing

the MBLSLA claim.).

Plaintiffs argue that the MBLSLA does not require a fraud pleading to have a claim

under the statute.    (Pls.' Resp. at 7.)    Plaintiffs state that deceit and material

misrepresentations, such as silent fraud or negligent misrepresentation, claims not subject

to Rule 9's heightened pleading standards, can be actionable under the MBLSLA.  (*Id.*)

---

[9]Plaintiffs only allege this claim against Defendant Nationstar and Defendant Holders.*See* Mich. Comp. Laws §§ 445.1675, 445.1651a(f)(excluding depository financial institutions, a "state or nationally chartered bank" from being liable under the MBLSLA.).

While those claims may be actionable against First Franklin, they are not actionable against Defendants.

### 4. Plaintiffs cannot establish that they are entitled to quiet title relief

Michigan law provides that "[a]ny person . . . who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action . . . against any other person who claims . . . [an inconsistent interest.]" Mich. Comp. Laws § 600.2932(1).  Under Michigan law, the plaintiff has the burden of proof in an action to quiet title and must make out a prima facie case of title.  *Stinebaugh v. Bristol*, 347 N.W.2d 219, 221 (Mich. Ct. App. 1984).  If the plaintiff makes out such a case, then the defendant has the burden of proving a superior right or title in itself.  *Beulah Hoagland Appleton Qualified Pers. Residence Trust v. Emmet County Rd. Comm'r*, 600 N.W.2d 698, 700 (Mich. Ct. App. 1999).  To establish a prima facie case of title courts have found that plaintiffs that "describe[] the chain of title through which they claim ownership of the disputed [property]" or "provide[] . . . a copy of a mortgage" satisfy the prima facie elements.  *Id.* at 700-01, *Johns v. Dover*, No. 291028, 2010 WL 2696656, at *1 (Mich. Ct. App. July 8, 2010).

This claim also fails.  Plaintiffs have not alleged how they are entitled to title free and clear of any mortgage.  They have not even alleged that they have paid off the loan.  Plaintiffs also cannot allege how the transfers of the mortgage and servicing duties entitles them to any right to the title.  *See Stacey v. Vista Mortg. Corp.*, 2011 WL 6650598, at *5 (E.D.Mich. Dec. 21, 2011) (Steeh, J.) (holding that "the plaintiffs'] bald assertion that fraud and deceit during the loan origination permits this court to quiet title in their name, notwithstanding [the assignee's] absence as a party during loan origination, lacks any legal or factual support.  There is no basis in law for extinguishing [the assignee's] security

18

interest, therefore the court is without authority to grant plaintiffs relief."). The Court dismisses this claim.

### 5. Plaintiffs have not stated a claim for declaratory relief for the pooling of the mortgage into a trust or for incurable title

In Counts VII and VIII, Plaintiffs seek declaratory relief for the pooling of the loan into a trust and for Defendants' alleged incurable lack of chain of title. Plaintiffs allege that the pooling and incurable title and the fact that an assignment has not been recorded in the Wayne County Register of Deeds renders the mortgage invalid, that Defendants do not have ownership of the loan, and that Plaintiffs no longer have to pay on the mortgage.

Defendants maintain that Plaintiffs have failed to allege any basis for the declaratory relief that they have requested in Counts VII and VIII. (Defs.' Mot. at 19.)

Defendants argue that Plaintiffs lack standing to challenge the transfers's validity. (Defs.' Mot. at 20.) Defendants are correct. *See Livonia Property Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 717 F.Supp.2d 724, 735-737 (E.D.Mich. 2010), *aff'd* 399 F.App'x 97, 103 (6th Cir. 2010) (holding that a borrower did not have standing to challenge an assignment of his mortgage because the assignment did not affect the borrower's rights.) (and citing cases for the same proposition.).

Plaintiffs argue that *Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329 (Mich. 2012), holds that they have standing to challenge the transfers of the mortgage. (Pls.' Resp. at 9.) *Kim* is inapplicable here. In *Kim*, the court addressed whether a mortgagee could foreclose on a property by advertisement before the mortgage and all assignments were duly recorded. 825 N.W. 2d at 332. The court held that a mortgagee could only foreclose on a property when all transfers or assignments were duly recorded. *Id.*

19

Here, *Livonia* is analogous and *Kim* is not. *Kim* is not analogous because, there, the court addressed a mortgagee's ability to foreclose on a property. The court held that Michigan statutory law requires that, before a party can foreclose by advertisement, all assignments have to be duly recorded. The *Kim* court did not address, at all, a plaintiff's standing to challenge an assignment. *Livonia* is therefore appropriate and analogous. Plaintiffs have no standing to challenge the transfer of the mortgage. Plaintiffs have not put forth any allegation that would lead the Court to find that *Livonia* should not guide the Court in its holding.

Plaintiffs argue that the pooling of the mortgage into a trust and the severing of the servicing from the holder of the mortgage renders the mortgage invalid. Defendants dispel these arguments and the Court agrees with Defendants.

Neither pooling the mortgage into mortgage-back security and selling it to a trust nor splitting the note from the indebtedness creates a cause of action. *See Stafford v. Mortgage Elec. Registration Sys., Inc.*, 12-10987, 2012 WL 1564701, at *4 (E.D.Mich. May 2, 2012) (Cohn, J.) (quoting and collecting cases for the proposition that "courts have uniformly rejected the argument that securitization of a mortgage loan provides the mortgagor with a cause of action." "To the extent that Plaintiffs' proposed amended complaint would rely on claims regarding the securitization of the loan . . . into a mortgage-backed security, there is no merit to the contention that securitization renders the lender's loan in the property invalid.") (and citing cases for the proposition that splitting the indebtedness from the note does not render either invalid.) (citations omitted). The Court dismisses this claim.

**V.    Conclusion**

20

For the above-stated reasons, the Court DENIES Plaintiffs' motion to remand and

GRANTS Defendants' motion to dismiss the complaint.

So ordered.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  December 17, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 17, 2013, by electronic and/or ordinary mail.

s/Richard Loury for Carol A. Hemeyer
Case Manager

21